# Exhibit 48

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dr. Gregory Sherr, | No. 16-CV-3075 (ADM/LIB) |
| Plaintiff, | |
| vs. | **PLAINTIFF'S ANSWERS TO HEALTHEAST DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF** |
| HealthEast Care System, CentraCare Health, Dr. Margaret Wallenfriedman, Dr. Mary Beth Dunn, Dr. Richard Gregory, Dr. Stephen Kolar, Dr. Jerone D. Kennedy and Archie Defillo, | |
| Defendants. | |

TO: HealthEast Defendants' and Their Attorneys William R. Stoeri, Meghan DesLauriers, Daniel Falknor, Suite 1500, 60 South Sixth Street, Minneapolis, Minnesota 55402-1498:

Plaintiff, Dr. Gregory Sherr ("Plaintiff"), hereby under oath answers HeathEast Defendants' Interrogatories as follows:

### GENERAL OBJECTIONS

1. The following answers are without in any way waiving or intending to waive:

   (a) All questions as to competency, relevancy, materiality, privilege and admissibility as evidence of these answers or their subject matter for any purpose in any subsequent proceeding in this or any other action;
   (b) The right to object to the use of any of said answers, or their subject matter, in any subsequent proceeding in this or any other action;
   (c) The right to object on any ground at any time to a demand for further answers to these or any other Interrogatories, or other discovery procedures involving or relating to the subject matter of these Interrogatories; and
   (d) The right at any time to revise, correct, add to or clarify any of these answers.

2. Plaintiff objects to these Interrogatories to the extent they seek information protected by the attorney/client privilege or work product doctrine, as defined by statute, rule or common law.

3. Plaintiff objects to these Interrogatories to the extent they attempt to impose an obligation to supplement answers beyond that contained in the Federal Rules of Civil Procedure.

4. Plaintiff objects to these Interrogatories to the extent Defendants already possess or have equal access to the information sought by these Interrogatories.

5. Plaintiff objects to these Interrogatories to the extent they attempt to expand the definition of terms to be substantially broader than the requirement of the Federal Rules of Civil Procedure. Accordingly, Plaintiff's answers shall be limited to the requirements of the Federal Rules of Civil Procedure.

6. Discovery in this case is not complete. Plaintiff accordingly reserves the right to supplement, change or modify these Answers to Defendants' Interrogatories at any time.

Subject to these objections, Plaintiff responds as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:** Please identify with specificity what you define as the relevant geographic markets for Counts VII, VIII, IX and X of the Amended Complaint, including but not limited to identifying the specific hospitals, clinics, health care providers, and/or neurosurgeons that comprise the geographic markets.

2

**ANSWER:** Plaintiff objects to this Interrogatory on the basis that it is overbroad, calls for information equally accessible to Defendants, and calls for a legal conclusion. Without waiving these objections and subject to them, Plaintiff states that he was a competitor for the provision of neurosurgery care in the mid-state portion of Minnesota – including the greater St. Cloud Area and the rural communities in this portion of the state ranging, for example, from Brainerd, to Wadena, to Fergus Falls, to Alexandria, to Wilmar, to Monticello – and in the Twin Cities metro area. Plaintiff had the busiest Neurosurgery practice in the mid-state portion of Minnesota along with Dr. Jeff Gerdes from January 2011 through December 2014 and treated patients from the communities listed above and others in that catchment area. Plaintiff estimates the area to include 800,000 to 1 million people, as the sphere of influence of St. Could hospital trauma services ranged up to the Fargo border, down to Monticello and up to the edges of Duluth, though discovery is continuing.

**INTERROGATORY NO. 2:** Please identify with specificity how the alleged misconduct of each defendant impacted the relevant markets, including but not limited to providing all facts and information related to any alleged injury to competition, any alleged increase in prices, and any alleged reduction in the number of procedures.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, and as seeking information under Defendant's control. Without waiving these objections and subject to them, Plaintiff states that Defendants' anticompetitive behavior deprived many patients in the relevant markets of medical care that was only provided by Plaintiff, including complex spinal surgery available within a reasonable driving distance, high-quality, in-house stroke care, vascular surgery, and a focused commitment to re-performing failed spinal fusions. Many patients in the market consisting of the mid portion of Minnesota, which is made up largely of rural farming communities, lost access to neurosurgical care altogether after Sherr was forced out of the market, as Sherr's practice included outreach clinics in many of these rural communities that were not available from other providers. This deficiency in care was intensified when Defendant's anti-competitive behavior prevented Plaintiff's MSBI colleagues from being credentialed at St. Cloud Hospital, which thereby prevented Plaintiff from having a backup neurosurgeon immediately available and prevented him from continuing to operate there. The mid portion of Minnesota is made up of communities that are in need of complex spine care, especially given the high quantity of farming injuries both degenerative and acute. Moreover, with regards to the stroke care provided uniquely by Plaintiff, Plaintiff created the Stroke program in the St. Cloud market. This program had never existed before and Plaintiff committed to complex vascular neurosurgery for that community. Plaintiff's commitment to never transferring a single neurosurgical patient (except perhaps young pediatric patients) from the St. Cloud community differentiated him from any potential competitor. The market has been deprived of a provider that guaranteed for patients in the market to receive tertiary, complex brain and spine care either initially at the St. Cloud

3

hospital or eventually in combination with a short stay as an inpatient in the cities with all follow-up care near their homes. Discovery is continuing.

**INTERROGATORY NO. 3:** Please describe in detail "the kind of care in which Plaintiff and MSBI specialize" as described in paragraph 148 of the Amended Complaint.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, and as seeking information under Defendant's control. Without waiving these objections and subject to them, Plaintiff hereby incorporates his Answer to Interrogatory No 2. Discovery is continuing.

**INTERROGATORY NO. 4:** Please identify with specificity all facts and information supporting your claim that the HE Defendants breached peer review confidentiality, including but not limited to each person who allegedly breached peer review confidentiality, when each alleged breach of peer review confidentiality occurred, where each alleged breach of peer review confidentiality occurred, the manner in which the confidential peer review information was transmitted or disclosed, what peer review information was transmitted or disclosed in each alleged breach, and to whom the information was disclosed.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, as seeking cumulative discovery, as seeking information protected by the attorney-client privilege and the work product doctrine, and as seeking information under Defendant's control. Without waiving these objections and subject to them, Plaintiff states that the facts supporting his claim that the HE Defendants breached peer review confidentiality were provided in his Complaint. Stryker Sales Representative Doug Mackay was informed of Dr. Sherr's summary suspension by a fellow Stryker sales representative from Abbot Northwestern within days of its occurrence. This sales representative told Mackay that he had learned of the suspension from SCH surgeons.

Moreover, on December 14, 2015, while Plaintiff was appealing his summary suspension and before any report of any kind had issued to the NPDB concerning Plaintiff, Defendant Defillo texted Plaintiff to inform him of a position open in Dubai in a "private/academic hospital as chairman of NS & NeuroSci," or words to that effect. Defillo described it to Plaintiff as an "excellent way to rebuild your career," or words to that effect. Plaintiff felt that Defillo had no legitimate reason to even be aware of any suspension of Plaintiff, much less any "need to rebuild his career," apart from improper disclosures by those involved in the process.

Plaintiff is further aware that Tom O'Connor, whom Plaintiff understands to have been the United Hospital President and an Executive Vice President in the Allina System and who had worked with the HE Defendants for years when the HE Defendants provided their services through United Hospital, had called Dr. Stefano Sinicropi to inform Sinicropi of

4

Plaintiff's summary suspension. Sinicropi said that O'Connor informed him that the suspension would directly and adversely affect the willingness of United Hospital and Allina-affiliated neurosurgeons to make any referrals to Plaintiff or MSBI. Sinicropi believed that O'Connor inferred in this telephone conversation that he was informed of the suspension by HE Defendants. O'Connor told Sinicropi that HE Defendants had "sharp elbows" and would not hesitate to use any means to eliminate potential competitors.

Shortly after Plaintiff's summary suspension, he was up for re-credentialing at Fairview Southdale, where he performed a significant percentage of his surgeries. In the course of the re-credentialing process, Plaintiff was informed by Kate Johnson, a credentialing specialist at Fairview Southdale, that executives at this Hospital had become aware of the summary suspension at HealthEast and St. Joseph's Hospital ("SJH"). This specialist informed Plaintiff via email that in order to be re-credentialed at Fairview Southdale, he would need to provide a letter of explanation from a practicing neurosurgeon at HealthEast, addressing the issues that led to the summary suspension.

Before his suspension, Plaintiff was informed by surgical tech staff that Defendant Dunn and Defendant Wallenfriedman "hated" Plaintiff being at HealthEast and that they felt Plaintiff was "showing them up." These surgical tech staff informed Plaintiff that Defendant Dunn and Defendant Wallenfriedman were "out to get" Plaintiff. They informed Plaintiff that they knew about this animosity from direct comments made by Defendants in the OR. Plaintiff does not know the names of these surgical techs, besides the first name of one: Stephanie. The other two were males. Discovery is continuing.

**INTERROGATORY NO. 5:** Please identify with specificity all facts and information supporting your claim that individuals outside of the HealthEast peer review process obtained confidential peer review information, including but not limited to each person who allegedly received confidential peer review information, including the "fellow Stryker Spine sales representative" and the "credentialing specialist at Fairview Southdale" referenced in the Amended Complaint, what confidential peer review information each person received, when the person received the confidential peer review information, where the person received the confidential peer review information, the manner in which the confidential peer review information was transmitted or disclosed, and from whom the person received the information.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, as seeking duplicative discovery, as seeking attorney-client privileged information and information subject to the attorney work product doctrine, and as seeking information under Defendant's control. Without waiving these objections and subject to them, Plaintiff refers Defendant to his Answer to Interrogatory No. 4. Discovery is continuing.

5

**INTERROGATORY NO. 6:** Please identify with specificity all facts and information related to the alleged statements that Allina President Tom O'Connor made to Dr. Sinicropi, as alleged in Paragraphs 80-82 of the Amended Complaint, including but not limited to the complete content of the conversation between Mr. O'Connor and Dr. Sinicropi, when the conversation took place, where the conversation took place, who initiated the conversation and each person involved in the conversation.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, as seeking duplicative discovery, and as seeking information under Defendant's control. Without waiving these objections and subject to them, Plaintiff refers Defendant to his Answer to Interrogatory No. 4. Discovery is continuing.

**INTERROGATORTY NO. 7:** Please identify with specificity all facts and information related to every conversation Plaintiff had about Plaintiff's peer review process and suspension at HealthEast, including but not limited to the content of each conversation, when the conversation took place, where the conversation took place, and each person involved in the conversation.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, as seeking cumulative and duplicative discovery, as seeking information under Defendant's control, and as seeking attorney-client privileged information and information subject to the attorney work product doctrine. Without waiving these objections and subject to them, Plaintiff refers Defendant to his Answer to Interrogatory No. 4 and documents reflecting and relating to his appeal of his summary suspension. Discovery is continuing.

**INTERROGATORNY NO. 8:** Please identify with specificity all facts and information supporting your claim that the HE Defendants defamed Plaintiff, including but not limited to each person who made an allegedly defamatory statement, the content of the defamatory statement, when the defamatory statement was made, where the defamatory statement was made, the manner in which the defamatory statement was transmitted, and each person to whom the defamatory statement was published, including the "operating room nurses" referenced in Paragraphs 48 and 49 of the Amended Complaint.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and as seeking information under Defendant's control. Without waiving these objections and subject to them, Plaintiff states that HE physician Defendants defamed Plaintiff, as described in paragraphs 48-49 of his Complaint, when they disparaged Plaintiff's speed of surgery to surgical techs/operating room nurses, and when they specifically verbally stated that Plaintiff's speed in surgery was putting his patients at risk. These statements were made in the operating room and were made repeatedly after HE Defendants and Plaintiff began

6

working together. Plaintiff does not know the names of the surgical techs who reported these statements to him, besides the first name of one: Stephanie. The other two were males.

Plaintiff also alleges that Defendant Wallenfriedman defamed him at a meeting of the Spine Council on October 6, 2015 when she alleged that Plaintiff had failed to order some basic and necessary imaging in connection with the treatment of eight patients. These statements were made verbally to the other members of the Spine Council. Plaintiff also alleges that, at this meeting, HE Defendants misrepresented the seriousness of the "infection rate" stemming from surgeries he performed. At this meeting, Defendant Dunn falsely claimed that Plaintiff cause his patients to "lose a liter of blood for every level of fusion surgery Plaintiff performed." Discovery is continuing.

**INTERROGATORY NO. 9:** Please describe in detail the relationship between Plaintiff and Allina Health between January 1, 2012 and today, including but not limited to, the nature of the relationship, any financial aspects of the relationship, the individuals at Allina involved in the relationship, the number of patients per month that Allina referred to Plaintiff between January 1, 2012 and today, and the amount of revenue generated from the relationship per month between January 1, 2012 and today.

**ANSWER:** Plaintiff objects to this Interrogatory as overly broad, vague and undefined, and as seeking cumulative discovery. Plaintiff also objects to the extent it seeks information not reasonably calculated to lead to the discovery of admissible evidence and as seeking confidential information of a third party business. Without waiving said objections and subject to them, Plaintiff was meant to have half of the MSBI dedicated spine call and call pay from Allina. This arrangement was cancelled and given to another colleague after the summary suspension at issue. Plaintiff estimates that he lost over $100,000 per year, not including surgeon fees, in lost business with Allina after his summary suspension.

**INTERROGATORY NO. 10:** 10: Please describe in detail the relationship between Plaintiff and Fairview Health Services between January 1, 2012 and today, including but not limited to, the nature of the relationship, any financial aspects of the relationship, the individuals at Fairview involved in the relationship, the number of patients per month that Fairview referred to Plaintiff between January 1, 2012 and today, and the amount of revenue generated from the relationship per month between January 1, 2012 and today.

**ANSWER:** Plaintiff objects to this Interrogatory as overly broad, vague and undefined, and as seeking cumulative discovery. Plaintiff also objects to the extent it seeks information not reasonably calculated to lead to the discovery of admissible evidence and as seeking confidential information of a third party business. Without waiving said objections and subject to them, Plaintiff states that MSBI and Plaintiff had arrangements to share in brain and spine call at Fairview Southdale and Ridges but although the contract was drawn up, the sudden issues related to his summary suspension from HealthEast

caused an abrupt change and the contract was withdrawn by Fairview. Plaintiff estimates that he lost at least $100,000 per year, not including surgeon fees, in lost business with Fairview after his summary suspension. Discovery is continuing.

**INTERROGATORY NO. 11:** Please identify with specificity all facts and information supporting Plaintiffs allegation that the individually named defendants, as a precondition to joining HealthEast, "demanded that HealthEast discontinue any use of MSBI physicians for neurosurgery and spine care, and that it remove any MSBI clinic presence from HealthEast" as alleged in Paragraph 42 of the Amended Complaint.

**ANSWER:** Plaintiff objects to this Interrogatory as overly broad, vague and undefined, as seeking cumulative discovery, and to the extent it seeks attorney-client privileged information or information subject to the attorney work product doctrine. Without waiving these objections, and subject to them, Plaintiff states that Dr. Sinicropi is the source of this information. Discovery is continuing.

**INTERROGATORY NO. 12:** Please identify with specificity all facts and information related to Plaintiffs separation from MSBI, including when it occurred, who was involved in the decision to separate, the basis for the separation, and all terms, negotiations and offers related to the separation.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad, vague and undefined, unduly burdensome, as seeking cumulative discovery, as seeking information protected by the attorney-client privilege and work product doctrine, as seeking confidential communications under Federal Rule of Evidence Rule 408, and as seeking the confidential information of a third party business. Without waiving these objections, and subject to them, Plaintiff states that the finalization process of Plaintiff's separation from MSBI is ongoing and the subject of current confidential negotiations. Plaintiff resigned from MSBI in lieu of termination stemming directly from MSBI's concern about the ramifications of his summary suspension. As part of this separation, MSBI calculates that Plaintiff owes MSBI $528,497 in costs it claims he was responsible for relative his salary draw related to expanding the MSBI practice and in costs for malpractice tail insurance coverage. MSBI also calculates that Plaintiff owes it $98,163.41 pursuant a promissory note and $2,569,270 pursuant an "early termination charge" in his employment agreement. Discovery is continuing.

**INTERROGTATORY NO. 13:** Please identify with specificity when Plaintiff joined his current neurosurgery group in Florida.

**ANSWER:** Plaintiff objects to this Interrogatory as not reasonably likely to lead to the discovery of admissible evidence. Without waiving this objection, Plaintiff states that he joined Neurosurgical Specialists of North Florida in July 2016. Discovery is continuing.

**INTERROGATORY NO. 14:** Please describe in detail Plaintiff's practice between January 1, 2012 and today, including but not limited to each facility where Plaintiff maintained(s) privileges, when Plaintiff maintained(s) privileges at each location, how many procedures Plaintiff performed per month, and the nature of the procedures.

**ANSWER:** Plaintiff objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence, as overly broad, as unduly burdensome, and to the extent it requests information in Defendant's control. Without waiving these objections and subject to them, Plaintiff provides the following *estimates* as follows, though he does not have access to documents which would provide more specific responsive information:

1) St. Cloud Hospital. Plaintiff performed over 600 cases per year encompassing all types of complex brain and spine surgery
2) Fairview Ridges. Plaintiff performed approximately 10-15 cases per month encompassing complex spine cases of all kinds, though he did not perform brain surgery.
3) Fairview Princeton. Plaintiff performed approximately 10 cases per month and these cases were generally simpler spine surgery given that this is a smaller hospital.
4) Fairview Southdale. Plaintiff believes he performed only one complex brain surgery case at Southdale.
5) North Memorial. Plaintiff performed approximately 4-5 cases per month encompassing complex brain and spine cases.
6) Maple Grove Hospital. Complex spine only, 4-5 cases per month
7) United Hospital. Plaintiff performed approximately 10-15 cases per month. These cases included complex spine and brain cases.
8) St. John's Hospital and St. Joe's Hospital of Healtheast. Defendant possesses all information about his practice at these facilities and is in a better position to provide such information.

**INTERROGATORY NO. 15:** Other than the suspension at issue in the Amended Complaint, please identify whether Plaintiff has been the subject of any professional disciplinary actions of any kind, including but not limited to denial, suspension or revocation of privileges, between January 1, 2005 and today.

**ANSWER:** Plaintiff objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence, as overly broad, as unduly burdensome, as an unwarranted invasion of privacy, and as a request for unduly prejudicial information. Without waiving these objections and subject to them, Plaintiff states that he has not had his privileges denied, suspended or revoked besides the incidents at issue in this matter. Discovery is continuing.

**INTERROGATORY NO. 16:** Please identify whether Plaintiff has been the subject of any medical malpractice or medical negligence lawsuits. If so, please provide the name of

9

the claimant, the substance of such claims, the jurisdiction where the claim was filed, and the result.

**ANSWER:** Plaintiff objects to this interrogatory as not reasonably calculated to lead to the discovery of admissible evidence, as overly broad, as unduly burdensome, and as a request for unduly prejudicial information. Without waiving these objections and subject to them, Plaintiff states that he was a co-defendant in the matter of Stacy L Schmitz, as Trustee for the Next-of-Kin of Joseph M Schmitz vs. Robert N Gardner, Centracare Health Paynesville LLC, CentraCare Health System, Gregory T Sherr. This matter was venued in Stearns County, Minnesota, Case No. 73-CV-14-9342. This matter involved claims of wrongful death and Dr. Sherr was found not liable. Discovery is continuing.

**INTERROGATORY NO. 17:** Please identify all facts and information related to Plaintiffs claim for damages, including but not limited to the amount of "lost income" Plaintiff allegedly incurred, Plaintiffs gross income (before accounting for any taxes or deductions), including the source(s) of the income, for each year from 2010 to present, expenses associated with his resignation, and any other damages alleged.

**ANSWER:** Plaintiff objects to this interrogatory as premature, overly board, as unduly burdensome, to the extent is seeks information not reasonably calculated to lead to admissible evidence, and to the extent it asks for a legal conclusion. Without waiving these objections, and subject to them, Plaintiff states that he was without income from the time of his separation with MSBI until July 1, 2016 and that his current practice is and will be far less profitable than the practice that was destroyed by the non-competitive behavior of Defendants at issue in this matter. Plaintiff's lost income included lost salary contractually owed to him via a draw and incentive based compensation. It also included a lost partnership track with MSBI and lost ancillary income of partial ownership in two active surgical centers. Additionally, Plaintiff incurred significant hard costs associated with building his Minnesota practice that he was unable to recoup due to the destruction of the practice by Defendants' non-competitive behavior and other costs associated with his separation, as described in Interrogatory No. 12 and are subject to negotiation, for which Plaintiff claims Defendants are liable.

Plaintiff also incurred the cost of Cobra to sustain insurance for his family during his period of unemployment and costs to engage in a robust job search. He also incurred significant legal fees in connection with defending himself through the peer review process, including $34,868.83 in legal expenses to one law firm and $7,917 to another, which he claims as damages in this matter. This does not include legal fees and expenses in the current matter, which are rapidly increasing. He suffered significant damage to his reputation and emotional distress. Discovery is continuing.

_____
**Gregory Sherr, M.D.**

Subscribed and sworn to before me
this _____ day of _____, 2017



_____
Notary Public


**AS TO FORM:**


                                        **SCHAEFER HALLEEN, LLC**

Dated:  February 1, 2017             _____
                                        Lawrence P. Schaefer (#195583)
                                        David C. McDonald (#125416)
                                        Peter G. Christian (#392131)
                                        Bert Black (#345052)
                                        412 South Fourth Street, Suite 1050
                                        Minneapolis, Minnesota 55415
                                        Telephone: 612-294-2619
                                        lschaefer@schaeferhalleen.com
                                        pchristian@schaeferhalleen.com

                                        ATTORNEYS FOR PLAINTIFF
                                        Dr. Gregory Sherr

_____
Gregory Sherr, M.D.

Subscribed and sworn to before me
this _13_ day of _February_, 2017

_____
Notary Public

Ashley Nicole Morris
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF983499
Expires 4/18/2020

Dated: 2/13/2017

SCHAEFER HALLEEN, LLC

_____
Lawrence P. Schaefer (#195583)
David C. McDonald (#125416)
Peter G. Christian (#392131)
Bert Black (#345052)
412 South Fourth Street, Suite 1050
Minneapolis, Minnesota 55415
Telephone: 612-294-2619
lschaefer@schaeferhalleen.com
pchristian@schaeferhalleen.com

ATTORNEYS FOR PLAINTIFF
Dr. Gregory Sherr