# Depo of Glenn Butterman

1

```
 1            UNITED STATES DISTRICT COURT
 2               DISTRICT OF MINNESOTA
 3   _____
 4   Dr. Gregory Sherr,         Civil File No.
 5          Plaintiff,          0:16-CV-03075-ADM/LIB
 6   v.
 7   HealthEast Care System, CentraCare Health,
 8   Dr. Margaret Wallenfriedman, Dr. Mary
 9   Elizabeth Dunn, Dr. Richard Gregory, Dr.
10   Stephen Kolar, Dr. Jerone D. Kennedy and
11   Archie Defillo,
12          Defendants.
13   _____
14
15         Deposition of GLENN BUTTERMANN, M.D.
16            taken on Monday, July 23, 2018
17               commencing at 1:35 p.m.
18
19
20   REPORTER:   Sandra D. Burch, RPR, CRR
21         Integrity Court Reporting, Inc.
       7900 International Drive, Ste. 300
22         Minneapolis, Minnesota 55425
     Office: 952.440.3886 * Toll free: 800.731.1903
23              www.IntegrityCR.com
24
25
```

1  A  Okay.
2  Q  -- in February of 2016 that resulted in his
3     summary suspension being overturned and his
4     privileges reinstated.
5        Are you aware of that?
6  A  So not exactly the details.  I know there
7     was things going back and forth, but I'm not
8     sure if I actually knew the final outcome
9     which you're alluding to.
10 Q  Right.  And my interest is in your knowledge
11    based on your status as a
12    shareholder/partner at MSBI and discussions
13    you were involved in around that time.
14       Do you understand?
15 A  Uh-huh.
16 Q  Do you recall MSBI, as a partnership, having
17    any discussions about Dr. Sherr after he had
18    successfully appealed his summary suspension
19    and secured its reversal?
20 A  No.  I don't remember exactly the discussion
21    for that.  But I do remember discussions
22    regarding the other systems, too, which
23    subsequently let him go as well, after the
24    HealthEast termination.
25 Q  You have an understanding --

1  A   Specifically, Allina let him go, too.  So
2      there was kind of a cascade of terminations.
3      And so, I don't remember where the appeal
4      ended up, and I don't remember -- it's too
5      far back to remember exactly what came of
6      that.
7  Q   Well, let me ask you this:  In that time
8      frame, in the late winter/early spring of
9      2016, could Dr. Sherr have been kept on as
10     an employee at MSBI in the situation that
11     you understood to be occurring at that time?
12 A   Could he have?  I mean, other than his
13     reputation being totally ruined?  I don't
14     know.
15 Q   And why do you say you feel at that point
16     his reputation had been totally ruined?
17 A   Well, he was talking Tom O'Connor knew about
18     it.  All the hospital administrators knew
19     it.  He wasn't getting any referrals.
20     Nowadays, his private practice is
21     disappearing.  We depend on the system's
22     referrals.  Well, the systems that, you
23     know, canned him.  Why would they refer to
24     us?  We can't afford his salary if he
25     doesn't have any revenue.

1   Q   And was that the nature of the discussion
2       that occurred at the partnership level?
3   A   **No. That's my opinion right now.**
4   Q   Right. But did --
5   A   **I don't remember that.**
6   Q   Okay. Remember that instruction earlier
7       that Mr. Falknor provided you? Wait until I
8       ask my question before answering it. I'm
9       going to do the same for you.
10  A   **All right.**
11  Q   I'm going to wait until you finish before I
12      ask the next question.
13          Do you recall any discussion at the
14      MSBI partner, ownership, shareholder level
15      in that time period about Dr. Sherr's
16      reputation and the viability of his practice
17      continuing in this geographic region?
18  A   **Yes.**
19              **MS. MOEN: Outside of peer**
20      **review.**
21              **THE WITNESS: I recall that,**
22      **yes.**
23  BY MR. SCHAEFER:
24  Q   And what was the nature of the discussion
25      you recall?

| | | |
|---|---|---|
| 1 | A | Well, that his reputation had been ruined |
| 2 | | and that the referrals would probably go |
| 3 | | away. |
| 4 | Q | Okay. |
| 5 | A | In general terms.  I don't remember the |
| 6 | | details, but in general terms. |
| 7 | Q | Okay.  And MSBI at that time made the |
| 8 | | difficult decision to close the St. Cloud |
| 9 | | clinic; correct? |
| 10 | A | It was killer for us.  We had all this |
| 11 | | staff.  We had, you know, these leases we |
| 12 | | already paid on we couldn't get out of. |
| 13 | Q | And that was -- you earlier described the |
| 14 | | financial harm to MSBI that occurred because |
| 15 | | of this HealthEast peer review process.  Is |
| 16 | | that what you're talking about? |
| 17 | A | Exactly.  But we had some contracting issues |
| 18 | | as well.  That compounded it.  But this |
| 19 | | HealthEast thing, that's what drove it. |
| 20 | Q | What was the -- what were the nature of the |
| 21 | | contracting issues?  Just generally describe |
| 22 | | those for me, if you can. |
| 23 | | MS. MOEN:  Objection to the |
| 24 | | extent the question would seek to disclose |
| 25 | | any business confidential information, but |

```
1    STATE OF MINNESOTA    )
                           ) ss.
2    COUNTY OF SCOTT       )

3

4    Be it known that I took the deposition of GLENN
     BUTTERMANN, M.D. on the 23rd day of July, 2018, in
5    Stillwater, Minnesota;

6    That I was then and there a Notary Public in and for
     the County of Scott, State of Minnesota and that by
7    virtue thereof, I was duly authorized to administer
     an oath;
8
     That the witness before testifying was by me first
9    duly sworn to testify the whole truth and nothing but
     the truth relative to said cause;
10
     That the testimony of said witness was recorded in
11   Stenotype by myself and transcribed into typewriting
     under my direction, and that the deposition is a true
12   record of the testimony given by the witness to the
     best of my ability;
13
     That the cost of the original transcript has been
14   charged to the party noticing the deposition, unless
     otherwise agreed upon by Counsel, and that copies
15   have been made available to all parties at the same
     cost, unless otherwise agreed upon by Counsel;
16
     That I am not related to any of the parties hereto
17   nor interested in the outcome of the action;

18   That the reading and signing of the deposition by the
     witness and the Notice of filing were not waived;
19
         WITNESS MY HAND AND SEAL this 30th day of July,
20   2018.

21

22   [SANDRA DENISE BURCH                    /s/ Sandra Burch
      Notary Public-Minnesota
      My Commission Expires Jan 31, 2020]
23   _____

24                           Sandra D. Burch, RPR, CRR

25            My Commission expires January 31, 2020
```

Integrity Court Reporting, Inc. * (952) 440-3886
www.IntegrityCR.com * sburch@integritycr.com